UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
VICTOR PERALTA,                         :        **OPINION AND ORDER GRANTING**
                                        :        **DEFENDANT ROCKEFELLER**
                        Plaintiff,      :        **UNIVERSITY'S MOTION FOR**
                                        :        **SUMMARY JUDGMENT**
          -against-                     :
                                        :
ROCKEFELLER UNIVERSITY                  :        04 Civ. 1278 (AKH)
                                        :
                        Defendant.      :
------------------------------------------------------x

ALVIN K. HELLERSTEIN, UNITED STATES DISTRICT JUDGE:

        Plaintiff Victor Peralta who is proceeding pro se filed this complaint against his

former part-time employer, defendant Rockefeller University, asserting claims of national origin

discrimination, race discrimination, color discrimination and retaliation in violation of Title VII

of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq.. The Defendant has moved for

summary judgment pursuant to Fed. R. Civ. P. 56. As elaborated below, since no specific facts

have been presented to show that there is a genuine issue for trial, Fed. R. Civ. P. 56(e),

defendant's motion is granted.


BACKGROUND

        Rockefeller University is a biomedical research institution. In November of 2000,

Defendant hired Plaintiff, an individual from the Dominican Republic, as a part-time laboratory

helper in the University's GENSAT and Heintz Laboratories. Plaintiff's job responsibilities in

the GENSAT Laboratory included assisting with laboratory experiments or projects, moving and

delivering items for the laboratory and general set-up for the laboratory. His job responsibilities

in the Heintz Laboratory included picking up and delivering boxes to the laboratory technicians.

Plaintiff was supervised in the GENSAT Laboratory by Sunni Garcha, an individual of Indian

national origin, and Shiaoching Gong, an individual of Chinese national origin and was supervised in the Heintz Laboratory by Judy Walsh, an individual of Irish-American national origin in the Heintz Laboratory.

The record reflects that Plaintiff had several difficulties in performing his work duties at the University. For example, when he failed to secure a freezer for a laboratory experiment he worked on in the GENSAT Laboratory, the experiment samples melted and the experiment had to be redone. In another incident at the GENSAT Laboratory, he broke several test tubes when he operated a centrifuge and did not realize that the tubes could not withstand the spinning of the centrifuge. Additionally, he had difficulty completing his job assignments in the GENSAT Laboratory in a timely fashion and his supervisor, Ms. Garcha, had to issue several memoranda reminding him of his job duties and responsibilities. Plaintiff was also unable to complete his work in the Heintz Laboratory as set forth in the work schedules that Ms. Walsh created for him.

After Plaintiff caused the second accident in the GENSAT Laboratory, Dr. Gong warned him that if he mishandled another laboratory experiment, he would no longer be allowed to work in the laboratory. On the Friday before Plaintiff's employment was terminated, Dr. Gong informed Plaintiff that since he had a third incident in the laboratory, an accident with a shaker where a glass container broke, he would no longer be allowed to work in the laboratory.

On August 20, 2001, Plaintiff's employment was terminated for unsatisfactory work performance. On September 19, 2001, Plaintiff filed a Complaint of Discrimination with the New York State Division of Human Rights ("Division") and jointly with the Equal Employment Opportunity Commission ("EEOC"), alleging that the University discriminatorily discharged him on August 20, 2001 due to his national origin. On September 24, 2001, Plaintiff voluntarily withdrew his September 2001 Administrative Complaint. On October 3, 2001, the Division

issued an Order of Withdrawal of the September 2001 Administrative Complaint.  On February 7, 2002, the EEOC issued a letter approving Plaintiff's withdrawal of the September 2001 Administrative Complaint.  The EEOC did not issue Plaintiff a Notice of Right to Sue letter for the allegations set forth in the September 2001 Administrative Complaint.

On December 2, 2002, Plaintiff filed a second Complaint of Discrimination with the Division and jointly with the EEOC alleging that the University discharged him on August 19, 2002 in retaliation for filing the September 2001 Administrative Complaint.[1]  On May 20, 2003, the Division issued a finding of No Probable Cause.  On November 4, 2003, the EEOC, adopting the findings of the Division, dismissed Plaintiff's December 2002 Administrative Complaint and issued him a Notice of Right to Sue.

Plaintiff commenced this action on December 23, 2003 by filing a Complaint with this court asserting causes of action for race discrimination, color discrimination, national origin discrimination and retaliation.


DISCUSSION

Summary judgment is warranted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A "genuine issue" of "material fact" exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Although all facts and inferences therefrom are to be construed

---

[1]      Though Plaintiff lists the date August 19, 2002 in his December 2002 Administrative Complaint, there is no record that he worked at the University at any time during 2002, nor does he elsewhere allege that he worked at the University in that time period.

in favor of the party opposing the motion, see Harlen Assocs. v. Village of Mineola, 273 F.3d 494, 498 (2d Cir. 2001), the non-moving party must raise more than just a "metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "[M]ere speculation and conjecture is insufficient to preclude the granting of the motion." Harlen, 273 F.3d at 499. "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted). Where, as here, a party is proceeding pro se, this Court has an obligation to "read [the pro se party's] supporting papers liberally, and ... interpret them to raise the strongest arguments that they suggest." Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994); accord, Soto v. Walker, 44 F.3d 169 (2d Cir. 1995). However, a pro se party's "bald assertion," completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment. Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991).

I.    **FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES**

Peralta has made claims based on national origin discrimination, retaliation, race discrimination, and color discrimination. As a prerequisite to filing a Title VII action in federal court, a plaintiff must first timely file an administrative complaint with the EEOC. See 42 U.S.C. § 2000e-5(e), (f). In states such as New York that have their own anti-discrimination laws and enforcement agency, the limitations period for filing an administrative complaint with the EEOC is three hundred days from the alleged discriminatory action. Id; Harris v. City of New York, 186 F.3d 243, 247 (2d Cir. 1999). The Supreme Court has held that "the act of filing a charge within the specified time period [is] mandatory." AMTRAK v. Morgan, 536 U.S. 101,

110 (2002).  Because Plaintiff failed to exhaust his administrative remedies as to each of these complaints, I grant defendant's summary judgment motion.

      A.  <u>National Origin Claim</u>

Plaintiff filed an administrative complaint alleging national origin discrimination with the New York State Division of Human Rights ("Division") and with the EEOC on September 19, 2001.  However, the filing of an administrative complaint alone does not fully exhaust administrative remedies.  <u>See</u> <u>Hill v. Citibank Corp.,</u> 312 F. Supp. 2d 464, 473 (S.D.N.Y. 2004). Subsequent to his September 19, 2001 filing, he withdrew his Administrative Complaint on September 24, 2001.  The plaintiff must also obtain a Notice of Right to Sue from the EEOC stating the agency's determination as to the allegations contained in the administrative complaint, and file a lawsuit within 90 days after receiving the Notice of Right to Sue ("Notice"). <u>Id</u>.  When a plaintiff withdraws his administrative complaint before the EEOC issues the Notice, this nullifies the complaint and thus constitutes a failure to exhaust the statutory prerequisites. <u>Brown v. City of New York</u>, 869 F. Supp. 158, 170 (S.D.N.Y. 1994); <u>see</u> <u>also</u> <u>Rivera v. United States Postal Serv.,</u> 830 F.2d 1037, 1039 (9th Cir. 1987), <u>cert. denied</u>, 486 U.S. 1009 (1988) (holding that "to withdraw is to abandon one's claim, to fail to exhaust one's remedies.").

Plaintiff never reinstated the September 2001 Administrative Complaint nor did he refile an administrative complaint alleging national origin discrimination with either the Division or with the EEOC.  Furthermore, plaintiff cannot rely on his subsequent Administrative Complaint for a claim of retaliatory discharge, filed December 2, 2002, to satisfy the statutory prerequisites for his national origin claims.  In order to rely on the later complaint, he must have included the claim of national origin discrimination in the later charge filed with an administrative agency, or his national origin claim must be based on subsequent conduct that is "reasonably related" to his

5

claim of retaliatory discharge.  Legnani v. Alitalia Linee Aeree Italiane, S.P.A., 274 F.3d 683, 686 (2d Cir. 2001).  The three situations in which claims not alleged in an administrative complaint are considered to be reasonably related to the allegations in the charge are:  (1) claims in a charge that would fall within the "scope of the [administrative agency's] investigation which can reasonably be expected to grow out of the charge of discrimination"; (2) allegations of retaliation by an employer against an employee for filing an administrative charge; and (3) claims which are further incidents of discrimination which are carried out in precisely the same manner as alleged in the administrative complaint.  Butts v. N.Y. Dep't of Hous. Pres. & Dev., 990 F.2d 1397, 1401 (2d Cir. 1993), superseded by statute on other grounds as stated in, Hawkins v. 1115 Legal Service Care, 163 F.3d 684 (2d Cir. 1998).

Plaintiff's claim of retaliation in his district court complaint is not "reasonably related" to his allegation in the 2002 Administrative Complaint because two different types of conduct prompted Plaintiff's two separate retaliation claims.  Plaintiff's 2002 Administrative Complaint states that he was retaliated against for filing his 2001 Administrative Complaint.  By contrast, his district court complaint alleges that he was terminated in retaliation for his alleged complaint to Human Resources about unfair treatment he received on the last work day before his dismissal.  The two incidents are not reasonably related.  See Porter v. Texaco, 985 F. Supp. 380, 384-85 (S.D.N.Y. 1997).  In Porter, the plaintiff alleged in her EEOC charge that she was retaliated against for participating in another employee's lawsuit, however, in her district court Title VII complaint, she alleged that she was retaliated against because she complained that she was denied a transfer to another position because of her sex.  See id.  The Court held that the retaliation complained of in the Title VII complaint was not a continuation of the retaliation alleged in the EEOC charge and that the plaintiff's Title VII retaliation allegation was not within

the likely scope of an investigation based on the plaintiff's EEOC charge.  See id.  As in Porter,

Mr. Peralta's retaliation claim in his district court complaint is not a continuation of the

retaliation claim set forth in his 2002 Administrative Complaint and is not reasonably related to

those allegations.


B.  Retaliatory Discharge Claim

Plaintiff filed his Administrative Complaint alleging retaliatory discharge on December

2, 2002.  Thus, any alleged unlawful acts that occurred prior to 300 days before this date

(February 6, 2002) are time-barred.  Plaintiff has made allegations involving actions that took

place during the time of his employment—from November 21, 2000 through August 20, 2001.

Since the last unlawful event that plaintiff alleges is his discharge on August 20, 2001,

his EEOC complaint was time-barred and he thus he has failed to exhaust administrative

remedies.  See Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 712 (2d Cir. 1996) ("Th[e]

statutory requirement effectively acts a as statute of limitations, and Title VII claims are barred

by the failure to file a timely charge.").


C.  Race and Color Discrimination Claims

Plaintiff also raises allegations race and color discrimination in his district court

Complaint.  However, he never pled nor raised any allegation of race or color discrimination in

any administrative complaint.  The Second Circuit has recognized that "claims that were not

asserted before the EEOC may be pursued in a subsequent federal court action if they are

'reasonably related' to those that were filed with the agency."  Shah v. N.Y. State Dep't of Civil

Serv., 168 F.3d 610, 614 (2d Cir. 1999).

The claims relate to the same conduct and the same parties and the boundaries between race, color and national origin are not always precise.  In some cases, courts have noted that "[a]n assertion of racial bias is conceptually distinct from a claim of discrimination based on national origin."  <u>Dixit v. City of New York Dep't of Gen. Servs.</u>, 972 F. Supp. 730, 734 (S.D.N.Y.1997).  Others, recognizing that "EEOC charges frequently are filled out by employees without the benefit of counsel and that their primary purpose is to alert the EEOC to the discrimination that a plaintiff claims [ ]he is suffering,"  <u>Alonzo v. Chase Manhattan Bank, N.A.</u>, 25 F. Supp. 2d 455, 458 (S.D.N.Y. 1998), have held that a claim of national origin discrimination by a Hispanic employee is reasonably related to later assertions of race and color discrimination in a district court complaint.  <u>See</u> <u>id</u>.

I need not reach a conclusion about this issue however, because even if I were to find that the race and color discrimination claims were reasonably related to the national origin claim, Plaintiff still encounters the problem that he failed to exhaust administrative remedies even on the specifically enumerated claims in the September 19, 2001 charge.

## II.    PLAINTIFF DOES NOT PREVAIL ON THE MERITS

The claims for discrimination based on national origin, race and color, and retaliatory discharge must also be dismissed on the merits because he cannot establish a <u>prima</u> <u>facie</u> case of discrimination.  Because Plaintiff has not produced any direct evidence of discrimination, I must apply the burden shifting analysis set forth in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973).  <u>See</u> <u>Farias v. Instructional Systems, Inc.</u>, 259 F.3d 91, 94 (2d Cir. 2001).  Under this framework, (1) Plaintiff must prove a <u>prima</u> <u>facie</u> case of discrimination; (2) if Plaintiff is successful, Defendant then bears the burden of production to articulate a legitimate, non-

discriminatory reason for Plaintiff's discharge; and (3) to prevail, Plaintiff must prove that Defendant's proffered reason for his discharge was not its true reason but, rather, a pretext for intentional, unlawful discrimination.

A.  Plaintiff Has Not Stated a *Prima Facie* Case for National Origin, Race or Color Discrimination

To establish a prima facie case of discrimination, Plaintiff must show that (1) he belongs to a protected class; (2) he was performing his duties satisfactorily; (3) he suffered an adverse employment action; and (4) the circumstances surrounding the adverse employment action give rise to an inference of discrimination.  See Ongsiako v. City of New York, 199 F. Supp. 2d 180, 188 (S.D.N.Y. 2002).  Plaintiff satisfies the first and third prongs of the prima facie case since he belongs to a protected class (he is Hispanic and of Dominican descent) and he was discharged from his employment.  However, Plaintiff has not been able to show satisfactory performance of his job.

The undisputed facts show that Plaintiff made a number of mistakes while performing his job.  While working in the GENSAT Laboratory, he failed to secure a freezer that stored an experiment, and as a result, the experiment samples melted and the experiment had to be redone. He also disrupted another laboratory experiment while operating a centrifuge.  Several of the test tubes broke and that experiment, too had to be redone.

Plaintiff also had difficulty completing his tasks in a timely manner.  Several memoranda submitted by the University and uncontested by the Plaintiff show repeated reminders to Plaintiff on how to perform his work assignments and to complete his assignments in a timely manner.  In his deposition, Plaintiff admitted that both Sunni Garcha and Judy Walsh expressed dissatisfaction with the amount of time that he took to complete his work.

In determining whether an employee's job performance was satisfactory, the Court may rely on "the employer's criteria for the performance of the job." Thornley v. Penton Publishing, Inc., 104 F.3d 26, 29 (2d Cir. 1997). Courts have further clarified that "the ultimate inquiry is whether an employee's performance 'meets his employer's legitimate expectations.'" Meiri v. Dacon, 759 F.2d 989, 995 (2d Cir. 1985) (quoting Huhn v. Koehring Co., 718 F.2d 239, 244 (7th Cir. 1983)). Plaintiff has provided some explanation for his mistakes but does not dispute that they occurred. Though he may disagree with his employer's expectations and assessments of his work performance, "attempts to explain away several . . . infractions do not raise material issues of fact." Sitkiewicz v. Initial Services U.S.A., No. 96 Civ. 8543 (DAB) 1999 U.S. Dist. LEXIS at * 15 (S.D.N.Y. Mar. 15, 2000).

B. Plaintiff Has Not Stated a Prima Facie Case for Retaliatory Discharge

To state a prima facie case for unlawful retaliatory discharge, a plaintiff must demonstrate (1) that he participated in a protected activity known to the employer; (2) that he suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action. Wimmer v. Suffolk County Police Dep't, 176 F.3d 125, 134 (2d Cir. 1999).

A "protected activity" as defined in 42 U.S.C. § 2000e-3 is an "action taken to protest or oppose statutorily prohibited discrimination" Crux v. Coach Stores, Inc., 202 F.3d 560, 566 (2d Cir. 2000). Plaintiff did not engage in any such activity. His December 2, 2002 administrative complaint alleges that the University terminated his employment in retaliation for filing the September 19, 2001 administrative complaint. However, he was fired from his position on August 20, 2001. Therefore, as the State Division of Human Rights noted in its finding of no

probable cause, Plaintiff's "employment was terminated prior to his filing of the first complaint. As such, the termination could not have been in retaliation for filing a complaint." (Bloom Aff. Ex. P at 1).

The only action that could be construed as protected activity was his complaint on August 17, 2001 to the Human Resources department about his argument with Judy Walsh. In order to meet the standard of a "protected activity," Plaintiff must have objectively believed that he was opposing an unlawful employment practice. See Spandola v. New York City Transit Authority, 242 F. Supp. 2d 284, 291 (S.D.N.Y. 2003). Plaintiff has not alleged nor has he produced any evidence that he complained of any unlawful discrimination. Rather, he simply complained that Ms. Walsh had lost her temper. Therefore, Plaintiff has not established that he was engaged in a protected activity, and thus has not made out a prima facie case for retaliatory discharge. See Wimmer, 176 F.3d at134.

**CONCLUSION**

For the reasons stated in this opinion, Defendant's motion for summary judgment is granted, and the complaint is dismissed. The clerk shall mark this case as closed.


SO ORDERED.

Dated: New York, New York
May 27, 2005

ALVIN K. HELLERSTEIN
United States District Judge

11